**BEVAN, MOSCA & GIUDITTA, P.C.**
A Professional Corporation
222 Mount Airy Road, Suite 200
Basking Ridge, New Jersey 07920
(908) 753-8300
John D. Coyle 02963-2001
Jesse C. Ehnert 03826-2007
Attorneys for Defendants
GenRenew LLC, Christopher S.
Sabin Sr., and Michael Mullen

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD M. ZELMA, *pro se*, <br><br> Plaintiff, <br><br> v. <br><br> SUNPOWER, a Foreign Profit Corporation; and GENRENEW LLC; a New Jersey Limited Liability Company; and CHRISTOPHER S. SABIN SR., as Managing Member and, MICHAEL MULLEN as Managing Member and, TELEMARKETERS calling from Local Spoofed N.J. Numbers and Does' [sic] (1-15) and ABC Corporations' [sic]; each acting individually, in concert or as a group, <br><br> Defendants. | Original Action: <br><br> SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY Docket No.: BER-L-7304-19 <br><br> **NOTICE OF REMOVAL** |

Defendants GenRenew LLC, Christopher S. Sabin Sr., and Michael Mullen (collectively "GenRenew"), with the consent and joinder of SunPower Corporation, incorrectly named as SunPower, hereby give notice of the removal of this civil action to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1441(c), and 1446, and in support thereof, states as follows:

{00092897.1 }

1.  On or about October 15, 2019, Plaintiff commenced this action by filing a Complaint with the Superior Court of New Jersey, Bergen County.  A true and correct copy of which is attached hereto as Exhibit A.

2.  The Complaint attached as Exhibit A, with Summons, Case Information Statement and Track Assignment Notice, constitute all of the pleadings that have been filed in this matter.

3.  It has not been more than 30 days since GenRenew received the Complaint.

4.  It has not been more than 30 days since co-defendant SunPower Corporation received the Complaint.

5.  As set forth in the attached consent to and joinder in removal, SunPower Corporation consents to and joins in the removal of this matter.

6.  As such, all defendants have consented to and joined in the removal of this matter.

7.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1441(c) inasmuch as this matter is a civil action alleging claims arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title).

8.  As set forth in Paragraph 2 of the Complaint, "This suit is brought pursuant to applicable authorities; 27 U.S.C. §§227(b)(1)(A)(iii) &(c)(5) (TCPA)."

9.  Further, Plaintiff alleges violations of 47 U.S.C. §§227(b)(1)(A)(iii) &(c)(5) in the Complaint entirely premised on same.

10. Plaintiff also alleges violations of 47 U.S.C. §§227(b)(3).

11. Plaintiff also alleges violations of 47 U.S.C. §§227(b)(1)(B).

12. Plaintiff also alleges violations of 47 U.S.C. §§227(b)(3)(A).

13. Plaintiff also alleges violations of 47 U.S.C. §§227(c)(5)(C).

14. Plaintiff also alleges violations of 47 C.F.R. §64.1601(e).

15. Plaintiff also alleges violations of 47 U.S.C. §§312(f)(1).

16. Plaintiff also alleges violations of 47 U.S.C. §§227.

17. According to the Complaint, Plaintiff is a resident of the state of New Jersey.

18. Pursuant to 28 U.S.C. §1441(a), the United States District Court for the District of New Jersey in Newark is the proper venue for removal because it encompasses the place where this action is pending.

19. Upon filing of this Notice of Removal, GenRenew will give written notice thereof to *pro se* plaintiff and will file a copy of this Notice of Removal with the Clerk of the Superior Court of New Jersey, Law Division, Bergen County.

**WHEREFORE,** GenRenew hereby removes this action now pending in the Superior Court of New Jersey to the United States District Court for the District of New Jersey in Newark, wherein it shall proceed as an action originally commenced therein.

*s/ John D. Coyle*
John D. Coyle 02963-2001
Jesse C. Ehnert 03826-2007
BEVAN, MOSCA & GIUDITTA, P.C.
222 Mount Airy Road, Suite 200
Basking Ridge, NJ 07920
Telephone: (908) 753-8300
Facsimile (908) 753-8301
jcoyle@bmg.law

Dated: November 14, 2019

Notice to:     Richard M. Zelma
               940 Blanch Avenue
               Norwood, NJ 07648

## CONSENT TO AND JOINDER IN REMOVAL

I, Wendy Bozzolasco, am the Deputy Chief Ethics and Compliance Officer, Senior Director Global Litigation, for defendant SunPower Corporation in this matter.  SunPower Corporation consents to and joins in the removal of this matter as set forth in this Notice of Removal from the Superior Court of New Jersey, Bergen County to the United States District Court for the District of New Jersey.

Wendy Bozzolasco, Deputy Chief
Ethics and Compliance Officer,
Senior Director Global Litigation,
SunPower Corporation

# Exhibit A

RICHARD M. ZELMA
Richard M. Zelma, *Pro Se*
940 Blanch Avenue
Norwood, New Jersey 07648
TCPALAW@optonline.net
Tel: 201 767 8153

| Date Filed | 10/15/19 |
|---|---|
| Payment # | 705 |
| CA CK CC MO CG | |
| Amount | 250 |
| Payor | Zelma |
| Batch/Ref/Case # | 739 |

---

| | |
|---|---|
| **Richard M. Zelma** | **SUPERIOR COURT OF NEW JERSEY** |
| **Plaintiff** | **BERGEN COUNTY** |
| vs. | **LAW DIVISION** |
| SUNPOWER, a FOREIGN PROFIT CORPORATION; | DOCKET NO.: BER- L- |
| and, GENRENEW LLC; a New Jersey LIMITED LIABILITY COMPANY; | <u>Civil Action</u> |
| and, CHRISTOPHER S. SABIN SR., as MANAGING MEMBER | **COMPLAINT FOR STRICT LIABILITY** |
| and, MICHAEL MULLEN as MANAGING MEMBER | **STATUTORY DAMAGES; TREBLED** |
| and, TELEMARKETERS calling from LOCAL SPOOFED N.J. NUMBERS | **DAMAGES; NEW JERSEY STATE** |
| and Does' (1-5) and ABC Corporations' (1-5); each acting | **TELEMARKETING DAMAGES and** |
| individually, in concert or as a group. | **PERMANENT INJUNCTIVE RELIEF** |
| **Defendants'** | |

## I.   <u>INTRODUCTION</u>

1. Plaintiff, Richard M. Zelma, residing at 940 Blanch Avenue, Norwood, New Jersey, says as follows:

2. This suit is brought pursuant to applicable authorities; 47 <u>U.S.C.</u> §§227(b)(1)(A)(iii),(c)(5)&(e) (TCPA) and <u>N.J.S.A.</u> §§56:8-1&130, which



prohibit the initiation of unsolicited marketing (robo) calls made by telephone; whether live, prerecorded, initiated through an Automated Dialing and Announcement Device (ADAD) or Automatic Telephone Dialing System (ATDS), (hereinafter; "dialer's" or "manually dialing loaded/stored numbers") where calling agents engaged in an affirmative act of knowing omissions, used false and misleading claims that were initiated through a telephone connected to a cellular network or land-line, where said numbers were listed with the federal and (NJ) state no-call-list, to avoid receiving unwanted telemarketing solicitations of any kind.

## II. PARTIES

3.      Richard M. Zelma, is a natural person and senior citizen, residing at 940 Blanch Avenue, in the Borough of Norwood, Bergen County New Jersey 07648.

## III. DEFENDANTS

4.  Upon information and belief and at all times relevant to this Complaint, SunPower Corporation (Hereinafter "SunPower", "Sunpower" or "Defendant") is a foreign for profit corporation and manufacturer of Solar Panels, authorized to do business in the

State of New Jersey and organized under the laws of the State of California.

5. Sunpower Corporation may be served upon its registered agent; United Agent Group Inc., 12 Christopher Way #200, Eatontown, NJ,07724

6. Upon information and belief, Defendant GenRenew LLC, (Hereinafter "Genrenew" or "defendant") is a New Jersey Limited Liability Company formed in April 2016.

7. Genrenew may be served upon its registered agent; Christopher S. Sabin SR., 101 Manfre CT., Freehold,NJ 07728.

8. Defendant Christopher Sabin ("Sabin") is listed as a Managing Member of Genrenew and may be served at 101 Manfre CT., Freehold,NJ 07728.

9. Defendant Michael Mullen ("Mullen") is listed as a Managing Member of Genrenew and may be served at 826 North 3rd St.,#5, Philadelphia PA. 19123.

10.  Plaintiff sues Defendants' Sabin and Mullen individually as managing members of Defendant Genrenew under the Responsible Corporate Officer Doctrine.

11.  Defendants Does' and ABC corporations' identities are currently unknown to Plaintiff and such parties will be identified as that information becomes available.

IV.  <u>JURISDICTION AND VENUE</u>

12.    The facts giving rise to this complaint had their primary effect in Bergen County New Jersey. This Court has specific jurisdiction over the Defendants under authority of <u>N.J.S.A.</u> §56:8-119. All Defendants are either domiciled in the forum state or claim to be domiciled in the Forum State; do business in the Forum State; have residence in the Forum State and/ or solicit into the Forum State, either personally, individually, through agents, lead generators, partners, managers, managing members, contractors or affiliates, thereby confessing to the laws of the State of New Jersey.

13.    This court has general jurisdiction pursuant to 47 <u>U.S.C.</u> §227, where Defendants engaged in substantial, continuous and systematic activities by repeatedly initiating unwanted autodialed (Robo calls), prerecorded or using live agents, into New Jersey, within this County, to Plaintiff, a resident whose phone numbers are registered on the Federal and States no-call list since inception and the controlling jurisdiction in which the violations occurred.

14.    As set forth above; all Defendants are presumed to be domiciled in the forum state, either personally, individually, through their acts,

.4.

agents and practices set forth herein, thereby confessing to the laws of the State of New Jersey.

15.    As further set out below, the defendants' and each of them purposely directed their activities toward Plaintiff, specifically, knowingly and deliberately into the Forum State, in violation to federal and state laws, and did so for their own financial gain.

## V. ACTS OF AGENTS

16.    Whenever and wherever it is herein alleged that the Defendants', either individually, in concert with others or as a group, did any act defined or described in the within matter, it is meant the Defendants' performed, directed, controlled and caused to be performed and/or participated in these acts and/or that Defendant's officers, members, managing members, employees, contractors, assigns, successors, predecessors, affiliates, or 'other' agent[s] performed or participated in those acts on behalf of, for the benefit of, and/or under the authority, direction and control of the Defendants' and each of them.

## VI. THE TCPA

17.    In 1991,Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

18.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system (ATDS) or an artificial or prerecorded voice (ADAD) to any telephone number assigned to the Federal and/ or State 'no-call-registry'.

19.    The TCPA provides a private cause of action to persons who receive calls in violation of these provisions. *See* 47 U.S.C.§§227(b)(3)&(c).

20.    A seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls.

21.    Regulations of the Federal Communication Commission ("FCC") "generally establish that the party on whose behalf a solicitation is made bears ultimate liability and responsibility for any violations." *See Rules and Regs. Implementing the Telephone Consumer Prot. Act of 1991*, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22.    The FCC affirmed this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *See: In the Matter of the Jt. Pet. filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574, 6574 (2013).

## VII. <u>THE NEW JERSEY CONSUMER FRAUD ACT</u>
### <u>N.J.S.A. §56:8-1</u> *et seq*

23.     The   New   Jersey   Consumer   Fraud   Act   defines "Customer" as "an individual who is a resident of this State and a prospective recipient of a telemarketing sales call. [See: *Definitions relative to telemarketing calls*; 56:8-120.]

24.     Unsolicited telemarketing sales call means any telemarketing sales call other than a call made: (1) in response to an express written request of the customer called; or (2) to an existing customer, which shall include the ability to collect on accounts and follow up on contractual obligations, unless the customer has stated to the telemarketer that the customer no longer desires to receive the telemarketing sales calls of the telemarketer. *See: Definitions Relative to Telemarketing* 56:8-120.

## VIII. <u>BACKGROUND</u>

25. Defendant Sunpower is a purveyor of Solar Panels, either through license or contract, sells and provides installation support as well as cooperative marketing to various dealers throughout the country.

26. Upon information and belief, Defendant Sunpower markets its product and services into the forum State through several its authorized dealers, in the instant

matter, that dealer is SunPower by GenRenew LLC. ("GenRenew")

27. Upon information and belief, Defendants Sunpower and GenRenew rely on lead-generators, outside call-centers, marketing individuals as well as solar-power specific residential qualifiers in the course of their solicitations.

28. Defendant Genrenew is a dealer for Defendant Sunpower where its telemarketing agents as well as its website, define themselves as a 'master dealer.'

29. Upon information and belief, Genrenew is believed to use and retain one or more call centers in which to market its services.

30. From information garnered through its calling agents, Genrenew is either a lead provider, lead generator and /or a solar panel installation entity as its website does not specify to which.

## IX.  FACTUAL ALLEGATIONS

31. Acting alone or in concert with others, GenRenew, Sunpower and the currently unknown Doe defendants, formulated, directed, controlled, had the authority to control and independently or in active concert with each other, participated in a plan, program or campaign in the acts and practices set forth in this Complaint.

32.   One   of   Genrenew's   strategies   to   acquire customers is telemarketing, involving the use of an automatic telephone dialing system ("ATDS") preloaded or programed to dial homeowners in a given area.

33.  Genrenew's       alternative       strategy       for telemarketing involves hiring third parties that make use of automatic telephone dialing systems ("ATDS") to solicit   potential   customers   through   the   use   of predictive  dialers  or  other  forms  of  auto  dialers. Genrenew engages the use of this equipment because it allows for thousands of automated calls to be placed at one time.

34.      Through this method, Genrenew shifts the burden of  wasted  time  to  the  consumers  it  calls  with unsolicited calls or messages.

35.      Likewise, it allows for the alibi, "*we* didn't call you."

36.      Defendant  Sunpowers  role  is  to  increase  its footprint  throughout  the  country  by  retaining services  such  as  that  of  Genrenew  and  others  to promote       Sunpower      solar      products       through telemarketing sales programs.

37.      Upon information and belief, it is apparent that Sunpower   is   the   controlling   entity   in   this consortium.

38.    As  the  Principal  entity,  Sunpower  authorizes,
directs  and  controls  the  marketing  practices  of  its
agents,  providing  licensing  and  guidelines  with
respect to 'any' of the agents marketing practices.

39.    Those  practices  are  to  oversee  how  and  when  such
campaigns  are  initiated  and,  as  it  relates  to  the
instant  matter,  Sunpower  is  expected  to  provide
guidelines  to  its  agents  such  as  Genrenew,  to  comply
with  all  Federal  and  State  Telemarketing  laws.

40.    Genrenew  had  repeatedly  made  claim  that  its  own
employees  perform  the  installation  and  all  work
involved from start to finish.

41.    In  actuality,  Defendant  Genrenew's  claims  are
misleading  and  false.  Genrenew's  leads  are  farmed-
out  to  actual  solar  installation  companies.  [See:
Plt.  **EXHIBIT  1**,  marked  by  Def  as  Ex  'A']  from  case;
MER-L-001534-19.

42.    Defendant  Sunpower  had  been  knowledgeable  of
this  charade  having  supported  Genrenew  throughout
these factually incorrect claims.

43.    Despite  taking  the  affirmative  step  of
registering  his  telephone  number  on  the  National  Do
Not  Call  Registry,  the  defendants  placed  seven  (7)
automated  telemarketing  calls  to  Plaintiffs  phones
on the following dates;

August 7, 2019 (973) 430-7000 12:19PM; NAME DISPLAYED - "PUB SVC ELEC &"
August 12, 2019 (800) 436-7734 1:27PM; NAME DISPLAYED - "PSE&G CUST SVC"

44.     The  two  (2)  foregoing  (separate)  calls  were
answered by Plaintiff.

45.     It  should  be  noted:  the  Defendants  used
fraudulent caller ID spoofing as Plaintiffs utility
company in the above cited two calls to encourage
Plaintiff to answer, but once answered, the callers
introduced themselves as calling from SunPower, not
the utility shown on Caller ID (CID)

46.     The callers asked for Plaintiff by name, saying
the purpose of the calls were to inquire about
alternative energy.

47.     When Plaintiff asked for more information, the
caller[s] stated:

         "someone will call you back and answer
         all your questions, is this a good
         number for you?" Then hung up.

48.     Again,  on  the  following  dates,  Plaintiff
started receiving additional calls to his land line
as follows:

         August 19, 2019 609 291 3111  8:23AM  CID/NO NAME SENT
         August 19, 2019 609 291 3111  12:24PM  CID/NO NAME SENT
         August 19, 2019 609 291 3111  6:05 PM  CID/NO NAME SENT
         August 19, 2019 609 291 3111  8:10PM  CID/NO NAME SENT
         August 20, 2019 609 291 3111  12:47PM  CID/NO NAME SENT

49.     Plaintiff could not answer the calls in time
but while the unanswered calls activated Plaintiffs
answering machine, no message was left as to who was

calling or the purpose of the calls.

50.     On August 19, 2019, following the second call of that day, Plaintiff called the Defendants from his land-line phone, the number that had repeatedly been called.

51.     He called 609 291 3111, which was answered by a female agent as "Genrenew Solar". Plaintiff asked for a manager and was transferred to Cory.

52.     When Cory was asked why the repeated calls, Plaintiff was told;

> "one of our employees called you because you were interested in our energy program."

53.     Cory's response; "our employees called you" is impliedly a clear representation that (a), the defendant had been given plaintiffs number by their lead generation partner and, (b) that more then one employee had attempted to call Plaintiff, and (c), this "one employee" called more then once.

54.     When asked how they got plaintiffs number, Cory said;

> "we get a bunch of leads. I can't tell you exactly from where, it comes from my boss!"

55.     Plaintiff was then transferred to 'Jay', identifying himself as a manager.

56.     Attempting to speak over Plaintiff, Jay specifically stated;

> "I understand you're not interested in us
> calling you any more. We will place you
> on our do not call list and <u>Genrenew Solar</u>
> <u>will not call you ever again."</u> [Emphasis added]

57.    This statement made by an agent of the
defendant implies; (a), that Jay identified
Plaintiffs number from their own internal Caller ID,
(b), that calls (plural) were made to Plaintiff at
the number Plaintiff called from, and (c), had the
defendants only called once, Jay would have stated,
"we only called you one time", but he did not.

58.    Plaintiff continued to question Jay as to the
source of Genrenew obtaining his number. Jay stated:

> "it is something I could look into, that it
> was a list that we purchased and at some point
> you (Plaintiff) had expressed interest."

59.    Jay further reiterated that "Genrenew will not
reach out to you again."

60.    Plaintiff told Jay you probably got my number
from a lead generator whereby Jay stated;

> **"thats correct!"**

61.    Jay went further to state;

> **"we would not have called you if you were
> on the national do-not-call registry!"**

62.    This claim further supports the fact that the
defendants <u>do not subscribe</u> to the Federal Registry,
as it is virtually impossible to call a number
registered thereon, scrubbed either manually or
electronically from any calling list as expressly

required by law. Id.

63.      When asked;

**"who initiated the calls, you or a call center?"**

64.      Jays response was; **"we did!"**

65.      When plaintiff asked: "how often is your list scrubbed",
Jays response was:

**"every time a lead is entered
into our system, it is scrubbed
against the do-not-call list."**

66.      The forgoing discussion was believed to be a
prevarication from a call-center representative,
hired by Genrenew, where the terminology and
procedure the agent described conflicts with, is
inconsistent with and somewhat ambiguous to the no-
call-list requirements and such alleged compliance
is expected to illuminate through continuing
discovery.

67.      Each of the defendants agents, managers and
employees admitted to having called plaintiff.

68. Plaintiff subscribes to phone number [201] 767
8153.

69. Plaintiffs phone number referenced above has been and
remains listed on the FTC and New Jersey no-call-registry
since inception, 2003 and 2004 respectively.

70.      Plaintiff never inquired about the defendants'
products or services.

71.    Plaintiff never heard of the defendants.

72.    Plaintiff does not need the defendants' products or services.

73.    Plaintiff never provided either or any of the Defendants express written consent to solicit him.

74.    Plaintiff never provided either or any of the Defendants his residential phone number.

75.    Plaintiff received each of the unlawful calls at issue, on the dates cited above, on his 8153 number, which were initiated from, by or on behalf of the defendants and each of them, as set forth in detail and described herein.

## X. <u>VIOLATIONS OF LAW</u>

76.    On the dates cited above, Plaintiff received and attempted to answer calls wanting to qualify his home for solar power.

77.    The defendants retained the services of the unidentified Doe defendants in a telemarketing campaign to convince the called parties to invest in solar power.

78.    SunPower, in concert with GenRenew failed or refused to oversee and monitor Genrenew's calling procedures, failed to establish an internal no-call-list from the FTC and/ or the State of New Jersey.

79.    Upon information and belief: SunPower and GenRenew, contracted with unknown Doe defendants,

having a service platform and tools to provide leads for homeowners.

80.    By using a computer-based telephone dialing platform, the defendants were able to blast out a large volume of telephone calls, especially robo-calls, in a short time, targeting prospective homeowners and using fraudulent and spoofed Caller ID, the calls were fraudulently spoofed to appear as if coming directly from the defendants utility.

81.    These Doe robo-callers, were either provided a list of numbers to be called by the Defendants or, the robo-callers provided their own list.

82.    Acting under the direction, knowledge, approval and control of the named Defendants, the robo-callers proceeded to funnel the list of numbers through the foregoing computer-based telephone dialing platform.

83.    By performing the acts defined above, the Defendants own Call Detail Records would be devoid of evidence showing they initiated calls to plaintiff or other residents in the defendants covered area.

84.    Plaintiff believes and thereby avers that once the Doe calls (Call-Center[s]) initiated their calls to Plaintiff, their script was carefully crafted to imply that the caller was actually Sunpower by GenRenew Solar.

85.    GenRenew Solar harbors information that would lead to the offending call-center or centers up to and including lead generators.

86.    GenRenew  Solar  and  Sunpower  harbor  the  call
centers  and  lead  generators  that  were  paid  to
initiate  the  calls  at  issue  and  to  the  benefit  of
both defendants.

87.    The defendants failed to demonstrate compliance
with  both  federal  as  well  as  state  telemarketing
laws  by  accepting  the  use  of  Federally  prohibited
calls,  having  knowledge  of  the  prohibited  activity,
and  having  control  over  the  use  of  this  activity,
directing, approving and benefiting from its use.

88.    The  defendants  are  therefore  liable  for
knowingly  initiating  telemarketing  calls  and
assisting  in  the  initiation  of  said  calls,  while
being  fully  aware  they  were  in  violation  of  minimum
regulatory  standards  and  therefore  prohibited  from
initiating said calls, but they did so anyway.

89.    Upon  information  and  belief,  the  Defendants'
and  each  of  them  failed  to  register  as  a
telemarketer  with  the  New  Jersey  Division  of
Consumer  Affairs.  [N.J.S.A.  §§56:8-121(a)&(b)]

90.    The  failure  or  refusal  by  the  defendants'  to
register  with  the  FTC's  no-call  registry  and  the  New
Jersey  division  of  Consumer  Affairs,  contributed  to
the  defendants  unlawful  acts  by  willfully  calling
consumers  who  registered  not  to  receive
telemarketing calls.

91.     In the alternative, the Defendants' and each of
them obtained a list of consumers who registered not
to receive telemarketing calls, but knowingly chose
to ignore that list and called anyway, which was the
result.

### XI.   THIS COURT'S POWER TO GRANT RELIEF

92.     47 U.S.C. §227(b)(3)(A) empowers this Court to
grant injunctive and other ancillary relief to
prevent and remedy any future violation by the
Defendants of any provision of law enforced by the
FCC that protects Plaintiff.

93.     Plaintiff will suffer continual harassment
along with substantial emotional distress and abuse
that will annoy and alarm his household if the
Defendants are permitted to continue to engage in
their questionable practices, if Permanent
Injunctive Relief is not granted.

94.     Accordingly, Plaintiff has a cause of action
against the Defendants and hereby seeks relief under
the TCPA's Strict Liability statutory damage award;
New Jersey no-call-law violations, as well as
Permanent Injunctive Relief pursuant to the
foregoing as against each of the Defendants'.

### XII.  COUNT ONE
### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, USING FALSE AND MISLEADING INFORMATION IN CONNECTION WITH A SOLICITATION; N.J.S.A. §56:8-2

95.     Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through ninety-four above as if set forth in full at length.

96.     The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, <u>whether or not any person has in fact been misled,</u> deceived or damaged thereby, is declared to be an unlawful practice;. . ..

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff punitive and statutory damages for each of the subject calls material to Count One as This Court deems justified.

XIII. <u>COUNT TWO</u>
<u>VIOLATIONS OF THE TCPA'S DO-NOT CALL</u>
<u>LIST REQUIREMENTS & PROTECTION OF</u>
<u>SUBSCRIBER PRIVACY RIGHTS</u>
<u>(47 U.S.C. § 227(c)(5)(A)</u>

97.     Plaintiff repeats, re-alleges and incorporates

by reference Paragraphs one through ninety-six above as if set forth in full at length.

98.    Federal Regulations codified under 47 C.F.R. § 64.1200(c)(2), state that "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. . . ." (Emphasis added).

99.    On the dates set forth herein, Plaintiff received and answered calls, identified  by the live representatives, made by or on behalf of the defendants, in violation of the foregoing regulations as well as 47 U.S.C. § 227(c)(5)(A), by initiating calls to numbers that had been listed on both the Federal and New Jersey State's no-call-registry since inception.

100.   The Defendants knowingly caused the initiation of the subject calls, by repeatedly initiating calls to Plaintiffs land-line number listed with the FTC do-not-call registry as well as the New Jersey no call registry.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff strict liability statutory damages for each of the subject calls material to Count Two.

### XIV. COUNT THREE
### VIOLATIONS OF THE NEW JERSEY NO CALL LAW
### ENGAGING IN PROHIBITED ACTIVITY
### PURSUANT TO N.J.S.A. §56:8-119

101.    Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through one hundred above as if set forth in full at length.

102.    The Defendants' initiated multiple phone calls to Plaintiffs residential telephone line in a campaign to solicit him for their solar panel products or services.

103.    New Jersey's no-call-law, codified at N.J.S.A. §56:8-119, defines "Telemarketing" as a plan, program or campaign which is conducted by telephone to encourage the purchase or rental of, or investment in, merchandise, but does not include the solicitation of sales through media other than a telephone call."

104.    The Defendants and each of them violated the provisions of the New Jersey no-call-law by initiating calls to Plaintiff in a campaign to sell their solar products or services.

105.    Under New Jerseys no call law, the Defendants calls fall far outside those considered permissible as they did not relate to continuing service but

rather to introduce a new service or product. This proscription is clearly defined and described under Title 13, Law and Public Safety, Chapter 45D;

106.    13:45D-4.4 CONTINUING SERVICES. A telemarketer may call an established customer on the no telemarketing call list or telemarketer specific no call list provided that the call is limited to the provision of continuing services and does not relate to expanded services, upgrades, products or other services unless directly related to the particular service or services previously provided.

107.    Plaintiff never inquired about the defendants products or services; Plaintiff, is not now or ever was a customer of the defendants.

108.    The Defendants initiated the calls to Plaintiff described herein with the intent to encourage the purchase or investment in the Defendant's solar products or services.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff trebled damages provided under the New Jersey no-call-law, N.J.S.A.§58:8-19, for each of the unlawful calls material to Count Three.

### XV. COUNT FOUR
### VIOLATION OF 47 C.F.R. § 64.1601(e)
### AS PROMULGATED UNDER 47 U.S.C. § 227(C)

109. Plaintiff repeats, re-alleges and incorporates by reference Paragraphs one through one hundred-eight as if set forth in full at length.

110. The defendants seven (7) robocalls were initiated without transmitting any caller's name and without transmitting a valid telephone number, thus constituting [a violation] of

47 C.F.R. § 64.1601(e) as promulgated under 47 U.S.C. § 227(c).[1]

111.    The defendants knowingly and purposely spoofed their number[s], sending no caller ID information, for the sole purpose to deny, deceive or mislead the called party as to who was calling, while wrongfully obtaining the value of deception, forcing the called party to answer the unlawful calls.

112.    The Defendants purposeful use of inaccurate Caller ID or in the alternative, no caller ID, caused harm by violating the law, peace and solitude of plaintiff's privacy.

113.    The defendant's purposeful decision to block the telemarketer or sellers name on caller ID was a deliberate attempt to hide their true identity, avoid prosecution and wrongfully obtain something of value for their own financial gain.

114. The defendants initiated their calls, devoid of factual and actual identification, intentionally cloaking their true identity, thus deceiving the called party to answer their unwanted calls.

115. Instead, the Defendants and each of them performed their act of deception by spoofing their caller ID to display

---

[1]  47 C.F.R. § 64.1601(e) requires every telemarketing call to transmit either the telemarketer or seller's name, and to transmit a phone number which a consumer could call back to request placement on the do-not-call list.

local numbers on Plaintiffs land-line, completely eliminating the[ir] Caller ID name. Hence, Plaintiff was tricked into responding to those calls, believing the local numbers were his utility company, only to hear a sales pitch selling the defendants products, goods or services, which was the result.[2]

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff strict liability statutory damages of $500.00 for each of the violations material to Count Four for a total of($3500.00).

### XVI. COUNT FIVE
### Award for Statutory Trebled Damages
### For Willful or Knowing Violations of
### the TCPA, 47 U.S.C. §227(b)(3)(C)

116.    Plaintiff hereby incorporates all of the allegations of paragraphs one through one hundred-fifteen as if set forth in full at length.

117.    At all times relevant, the Defendants purposely, willfully or knowingly made the calls at issue to Plaintiff; initiated or caused the initiation of those calls to Plaintiff; delivered and completed those calls to Plaintiff, which were purely commercial in nature, to benefit the

---

[2]   Defraud; tricked; To practice fraud; to cheat or trick; to deprive a person of property or any interest, estate, or right by fraud, deceit, or artifice. People v. Wiman, 148 N. Y. 29,42 N. E. 408; Alderman v. People, 4 Mich. 424, 09 Am. Dec. 321; U. S. v. Cur-ley (C.C.) 122 Fed. 740; Weber v. Mick, 131 111. 520, 23 N. El 640; Edgell v. Smith, 50 W.Va. 349, 40 S. B. 402; Curley v. U. S. 130 Fed. 1, 04 C. C. A. 309. Blacks Law Dictionary 6th Edition.

Defendant's own financial gain.

118.    Plaintiffs   notice   not   to   receive   any
telemarketing  calls  was  made  by  registering  his
phone  numbers  with  the  Federal  and  State  no-call-
list  at  commencement  of  said  registry  in  2003  &
2004.

119.    The  Defendants'  and  each  of  them  failed  and
willfully  ignored  registering  with  the  appropriate
agency,    purchasing    the    relevant    no-call-list,
subsequently  violating  plaintiff's  no-call  request.

120.    The  Communications  Act  of  1943  (of  which  the
TCPA  is  a  part)  does  not  impose  a  mental  state
requirement  in  that  it  defines  willful  conduct  as
"the  conscious  or  deliberate  commission  or  omission
of  such  act,  irrespective  of  any  intent  to  violate
any  provision,  rule  or  regulation."

121.    The  defendants'  knew  or  should  have  known  their
intentions  to  call  plaintiff  would  violate  the  TCPA
as  well  as  New  Jersey's  no-call  law,  but  chose  to
initiate  those  calls  anyway.

122.    Accordingly,  the  willful  intent  to  violate  the
TCPA  and  with  direct  knowledge  of  the  prohibited
acts,  the  Defendants'  are  liable  to  plaintiff  under
the  TCPA  for  each  such  violation,  trebling  the  $500
statutory  damage  amount  per  violation  per  call,  to
an  award  of  $1500.00  per  each  such  violation  per

call as per Count Five.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

Award Plaintiff statutory trebled damages of $1500.00 for each such violation set-forth above relevant to each unlawful call material to Count Five.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

(a)     Award Plaintiff strict liability statutory damages for the series of subject calls material to Count One.

(b)     Award Plaintiff strict liability statutory damages for the series of subject calls material to Count Two.

(c)     Award Plaintiff strict liability statutory trebled damages for the series of subject calls material to Count Three.

(d)     Award Plaintiff strict liability statutory damages for the series of subject calls material to Count Four

(e)     Award Plaintiff strict liability statutory trebled damages for the series of subject calls material to Count Five

(f)     Award Plaintiff the cost of this litigation pursuant to N.J.S.A. §56:8-19

(g)     Award     Plaintiff     Permanent
Injunctive  Relief  pursuant  to  47  <u>U.S.C.</u>
§227(b)(3)(A)

(h)     In the alternative, award Plaintiff
any  Other  Equitable  Relief  the  Court  deems
justified  to  stop  the  aggravated  harassment
defined and described herein.

(i)     Plaintiff  reserve  the  right  to
amend this complaint in the event additional
violations   and/   or   defendants   surface
throughout the course of this action.

(j)     Plaintiff  reserve  the  right  to
supplement   this   prayer,   in   the   event
additional   violations   surface   through
continuing discovery.

Respectfully submitted,

By: _____
    RICHARD M. ZELMA, *pro se*

Dated: <u>October 7, 2019</u>

## RULE 4:5-1 CERTIFICATION

Pursuant to the requirements of R. 4:5-1, I certify that the matter in controversy is not the subject of any other Court or Arbitration proceeding, nor is any other Court or Arbitration proceeding contemplated.  No other parties should be joined in this action.

By: _____

RICHARD M. ZELMA, *pro se*

Dated: October 7, 2019

### NOTICE TO ATTORNEY GENERAL
### FOR THE STATE OF NEW JERSEY

NOTICE IS HEREBY GIVEN to the Office of Attorney General for the State of New Jersey pursuant to *N.J.S.A.* *§56:8-20* of the within claim based upon violations of the Consumer Fraud Act and the New Jersey no-call law.

I hereby certify that contemporaneous with the filing hereof, a copy of this pleading has been mailed to the aforesaid Office of Attorney General for the State of New Jersey at the New Jersey State Division of Law, Hughes Justice Complex, 25 W. Market St., P.O. Box 112, Trenton, NJ 08625-0112.

_____

RICHARD M. ZELMA, *pro se*
PLAINTIFF
Norwood, NJ 07648

Dated: October 7, 2019

# Exhibit A



### GenRenew
Channel Partner Agreement

This Non-Exclusive Channel Partner Agreement ("Agreement") is made this _2_ day, _July, 2019_ by and between GenRenew, LLC ("Company") and _Sun Panel Marketing LLC_ ("Channel Partner") for the express purpose of allowing Channel Partner to sell solar installations on behalf of GenRenew, LLC. NOW, THEREFORE, in consideration of the mutual promises set forth herein, Company & Channel Partner (the "Parties") agree as follows:

1.  TERM. The term of this Agreement will continue for a period of one (1) year and renew for successive periods of one (1) year, unless any Party notifies the others in writing at least ninety (90) days prior to the expiration of the current term of its desire not to renew the Agreement.

2.  PRICING, TERMS, OBLIGATIONS. Channel Partner's cost for a solar sale shall be determined by Exhibit A. Pricing, terms of payment, Company and Channel Partner obligations shall be as described in Exhibit A. Pricing shall be maintained and continuously updated. Additional terms and obligations solely concerning Company and Channel Partner shall be as described in Exhibit B.

3.  COMPLIANCE WITH LAWS: Channel Partner and Company represent that they have the authority to enter into this Agreement and agree to comply with all applicable state and federal laws, regulations and rules in connection with their obligations and performance under this Agreement. Channel Partners should be licensed and insured in their respective state of operation.

4.  TAXES AND FEES. Channel Partners shall be responsible for all taxes and fees associated with Channel Partner's business operations.

5.  TERMINATION.
    a. Any Party may immediately terminate this Agreement should another Party breach any of its representations, warranties or obligations hereunder unless such breach is cured to the satisfaction of the non-breaching Parties within ten (10) days written notice thereof.

6.  CONFIDENTIALITY.
    i. Unless required by law, no Party shall disclose the specific terms and conditions of this Agreement to any outside party; provided, however, all Parties may disclose such terms and conditions to any bona fide prospective or existing lender, investor, or acquirer provided such lender, investor or acquirer has executed a non-disclosure agreement containing customary disclosure restrictions, including restricting use of the information solely for the purpose of evaluating such loan, investment or purchases.

    ii. Each Party agrees to keep confidential such information of the other Parties that is identified as confidential or known by the receiving Party to be confidential. Notwithstanding the foregoing, Channel Partner shall assume that all information Channel Partner gains access to, or knowledge of, concerning Company's Products, customers, markets, technology (including without limitation, its Measure/Order Data Interface IT system), software, intellectual property, methods, strategies, plans, prices, costs, agents or business in general is confidential information and constitutes Company's trade secrets and other intellectual property. No right, title or interest in Company's intellectual property is transferred, licensed or conveyed under this Agreement to Channel Partner. Such confidential information will not be used or disclosed except as authorized by the providing Party. Such information will be disclosed to employees of the receiving Party only on a "need to know" basis and only after such employee is informed of the confidential nature of the information and obligated to maintain confidentiality. Confidential information shall not include information which is now or becomes part of the public domain, was already known by the receiving Party at the time of disclosure, is independently developed by the receiving Party without any use of confidential information, or is lawfully obtained from a third party. Each Party's confidentiality obligations will survive termination of this Agreement.

7.   OTHER REPRESENTATIONS AND WARRANTIES.

  a.  EXECUTION, DELIVERY and PERFORMANCE. All Parties have all requisite power and
      authority and hold all licenses, permits and other required authorizations from governmental
      authorities necessary (if any) to fulfill its respective obligations under this Agreement.

  b.  LIMITED LICENSE TO USE TRADENAMES, TRADEMARKS AND SERVICE MARKS.
      Each Party grants to the others a limited, non-exclusive, non-transferable, non-
      sublicensable, revocable license to use each other's trade names, trade dress,
      trademarks, and service marks (collectively, "Marks") solely in connection with the
      performance of this Agreement. Marks shall only be used in accordance with the
      specifications provided from time to time by the Party whose Marks are being used.
      In the event that such specifications are not provided, no Party shall use any of the
      other Party's Marks for any purpose without first obtaining the prior advance
      written consent of the Party whose Marks are contemplated to be used. No Party
      shall use marketing materials incorporating the other Party's Marks without such
      Party's prior written consent. Each Party may inspect and monitor the other
      Party's use of the Marks at any time, and each Party shall comply with the other
      Party's instructions related thereto. Channel Partner shall not, without Company's
      prior written consent, use any other trademark or trade dress in connection with
      Company's products. Each Party shall retain ownership of all of its Marks and other
      intellectual property rights, including the good will connected therewith. Each Party
      agrees that, other than the limited rights granted herein, no right, title or interest
      to any Marks is transferred to the other Parties under this Agreement. Use of the
      Marks shall inure to the benefit of the owners of the Marks.  No Party will take any
      action that is inconsistent with the ownership of the Marks.

  c.  OBLIGATIONS UPON TERMINATION. Upon termination (for any reason) each Party shall
      promptly return all papers, point of purchase displays, sales samples, materials and other
      property to the other Parties then in its possessions. Channel Partner shall remain entitled to
      full payment for any sales made prior to termination.

8.   INDEMNIFICATION Each Party will indemnify and hold harmless the other Parties (the
     "Indemnified Parties") and the other Parties' officers, directors, shareholders and employees
     (collectively, together with the Indemnified Parties, the "Indemnified Persons") from and against
     any demand, suit, action or proceeding brought by any outside party arising in connection with a
     violation by such Party (the "Indemnifying Party") of any of the provisions of this Agreement
     (including, without limitation, any of the representations or warranties of the Indemnifying Party
     set forth in this Agreement) or the negligence or willful misconduct of the Indemnifying Party, in
     each case to the extent not attributable to a breach by the Indemnified Parties of any of the
     provisions of this Agreement or the negligence or willful misconduct of any of the Indemnified
     Persons (collectively, the "Indemnified Claims"), and all damages, costs and expenses
     (including, without limitation, reasonable attorneys' fees and settlement costs, as applicable)
     sustained or incurred by Indemnified Person in relation thereto.

9.   LIMITATION OF LIABILITY/DISCLAIMER OF WARRANTY. THE PARTIES AGREE TO LIMIT THEIR
     LIABILITY TO EACH OTHER TO DIRECT DAMAGES ONLY.  NOTWITHSTANDING ANYTHING TO
     THE CONTRARY CONTAINED HEREIN NO PARTY SHALL HAVE ANY LIABILITY FOR ANY INDIRECT,
     INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OR ANY LOSS OF REVENUE OR PROFITS
     ARISING UNDER OR RELATING TO THIS AGREEMENT, EVEN IF IT HAS BEEN ADVISED OF THE
     POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL DEALER'S LIABILITY EXCEED THE
     COMMISSIONS PAYABLE, IF ANY, TO THE SUB-DEALER PURSUANT TO THIS AGREEMENT. EACH
     PARTY HEREBY DISCLAIMS ALL WARRANTIES TO THE OTHER AND ALL OUTSIDE PARTIES,
     EXPRESS, IMPLIED, STATORY OR OTHERWISE, WITH RESPECT TO THE DEALERS SERVICE AND
     THE SUB-DEALERS SERVICE, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF
     MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

10.  DISPUTE RESOLUTION - INJUNCTIVE RELIEF. The Parties agree that the breach by any of them
     of their respective obligations regarding the other's trademarks, trade names, service marks or
     confidential information would result in irreparable injury for which there is no adequate remedy

at law. Therefore, in the event of any breach or threatened breach by any Party of its obligations regarding trademarks, trade names, or service marks of confidential information of the other, then the breaching Party will be entitled to seek temporary and permanent injunctive relief, in addition to any other remedies to which it may be entitled at law or in equity.

11.  FORCE MAJEURE No Party hereto shall be considered in default in performance of its obligations hereunder if performance of such obligations is prevented or delayed by acts of God or government, or other events beyond the reasonable control of the Party. Time of performance of any Party's obligations hereunder shall be extended by the time period reasonably necessary to overcome the effects of such occurrences.

12.  EMPLOYEE NON-SOLICITATION. During the Term and for a period of six (6) months thereafter (collectively, the Non-solicitation Period), both parties shall not directly or indirectly, individually or on behalf of any person other than the parties, aid or endeavor to solicit or induce any of the other parties or its affiliate's employees to leave their employment with the other party or such affiliates in order to accept employment with the other party or any other person, corporation, limited liability company, partnership, sole proprietorship or other entity. If the restrictions set forth in this section would otherwise be determined to be invalid or unenforceable by a court of competent jurisdiction, the parties intend and agree that such court shall exercise its discretion in reforming the provisions of this Agreement to the end that both parties will be subject to a non-solicitation covenant which is reasonable under the circumstances and enforceable by the parties. It is agreed that no adequate remedy at law exists for the parties for violation of this section and that this section may be enforced by any equitable remedy, including specific performance and injunction, without limiting the right of the parties to proceed at law to obtain such relief as may be available to it. The running of the Non-solicitation Period shall be tolled for any period of time during which either party is in violation of any covenant contained herein, for any reason whatsoever.

13.  GENERAL Channel Partner shall not assign its rights or delegate any of its duties hereunder without the advance written consent of Company, which consent shall not be unreasonably withheld or delayed, provided however, that this restriction shall not apply to an assignment as part of a merger or sale of company or substantially all of the assets of the company. The terms and conditions of this Agreement shall be binding upon and shall inure to the benefits of the Parties and their respective successors and permitted assigns. This Agreement shall not be amended or modified except as by a written document signed by all Parties.  This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, without reference to principles of conflicts of laws. All notices hereunder shall be in writing and shall be deemed given upon personal delivery or when sent by certified mail, postage prepaid, return receipt requested, at above. A Party may change such address for notice upon written notice given in accordance with the provisions hereof. The headings used herein are inserted for convenience only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement. If any provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable, such provision shall be automatically reformed and construed so as to be valid, operative and enforceable to the maximum extent permitted by law or equity while preserving its original intent. The invalidity of any part of this Agreement shall not render invalid the remainder of this Agreement. Waiver by a Party of a breach of a provision of this Agreement shall not operate as nor be construed as a waiver of any subsequent breach thereof.  Notwithstanding anything to the contrary contained herein, the Parties acknowledge and agree that their obligations pursuant to Section 7 b.,8,10, and 12, and those which by their nature should survive termination of this Agreement, shall survive termination of this Agreement. All Parties to this Agreement represents, agrees and warrants that it will perform all other acts and execute and deliver all other documents that may be necessary or appropriate to carry out the intent and purposes of this Agreement. This Agreement constitutes the entire agreement between the Parties regarding the subject matter contained herein and supersedes all prior and contemporaneous undertakings and agreements of the Parties, whether written or oral, with respect to the subject matter herein.

IN WITNESS WHEREOF, the undersigned have executed this agreement as of the date first set forth below.

Company: GenRenew, LLC

Channel Partner: Sun Panel Marketing, LLC

Signed _Michael Mullen (signature)_

Signed _James C. George (signature)_

Name : Michael Mullen

Name: James C. George

Title : Co-Founder

Title: Manager

Date 7/5/19

Date: 7/2/19

Channel Partner Registered (legal) Name: Sun Panel Marketing, LLC
Business Name if different
(dba) Save with Illinois Shines

Ownership (circle one): Corporation (LLC) Partnership Sole Proprietor
Other:_____

Channel Partner Federal Tax ID: 84 - 2099110

City: 257 S. Prospect Ave, Clarendon Hills, IL 60514

State/Province/Zip:_____

Phone 630 - 460 - 1614

Fax_____

Web www. Save with Illinois Shines. Com

Channel Partner Administrative Contact:

Bill-To Address: 257 S. Prospect Ave

Name: Ronald Bailis

City: Clarendon Hills,

Position Manager - Counsel

State/Province/Zip: IL

Email RSBailis @ Gmail. Com

Country_____

Phone 904 - 806 - 1695

## Exhibit A
Pricing, Services and Terms

**Pricing:**
1. **Product:** SunPower Solar Lease or Mosaic Loan
2. **Lease Payment:**
   a. Lease base price will be at $3.45 a watt, this does not include adders.  If you sell a system for $4.10 with no adders, you will have a $.65 dealer fee.
   b. Cash pricing and loan pricing in Illinois will be dependent on the module chosen; a pricing addendum will be issued to show the cost to install these jobs

**Payment terms: 50%** of Channel Partner fees are to be paid once GenRenew receives (M1) first payment from lease or loan holder (within 2 weeks of paperwork being complete), the remaining balance (**50%**) to be paid once GenRenew receives (M2) approval from lease or loan holder (approximately 2 weeks after install start). All payments to be made on the Friday that follows lease or loan holder approval notification.

**Territory:** *Illniois*

**GenRenew provided services, capabilities and obligations:**
1. Pre and post-sale Channel Partner/customer support
2. All State, Utility and any applicable governmental permits or approval processing
3. Full Installation of solar System
4. All post state, utility and any applicable governmental permits or approval processing

**Channel Partner obligations:**
1. Represent GenRenew with integrity and honesty in all dealings with prospective customers
2. Make no exaggerated claims as to GenRenew's capability or the product performance.
3. Channel Partner shall insure that all employees who sell or represent GenRenew & SunPower are properly trained and certified to assess the suitability of the product for a particular customer and evaluate prospective customers' requirements.
4. Channel Partner shall operate within all state and federal laws, taking care to ensure that customers are offered the product warranty before purchase and that customers always receive written notice of their right to cancel the transaction within three days of their signed order.

**Exclusivity**
Channel Partner agrees to represent GenRenew exclusively for all territories that GenRenew offers its services.  For example, you can not offer a Residential Customer any other product without the written consent of GenRenew.  If there is territory that GenRenew does not off services, you may sell there but must notify GenRenew.

**Lead Conflict and Resolution:**
1. As both companies are working in the same territory, there is potential for both to be obtaining an identical lead from different sources.
2. Whomever obtains an appointment sat with an identical lead will indefinitely have the sole right to that lead and if lead is sold by other company, full compensation is due to company with original appointment.

## Exhibit B

Additional Dealer and Sub-Dealer Pricing, Services and Terms

1. **Sales** – A sale is considered a sale when the following conditions have been met;
   a. The SunPower Welcome call has been made in the house with the customer.
   b. All Sales documents are signed and submitted Plus;
      i. Copies of Utility Bills
      ii. Limited Power of Attorney
      iii. Site Eval Form (Complete)
      iv. Copy of Homeowner Survey
      v. HOA Approval forms (if Applicable)
   c. All Site Evaluation Photos are uploaded (The correct & sufficient amount)
   d. Roof is less than 15 years old
   e. If a GenRenew site evaluation is required by our in house technician, a sale is not considered complete until this has been done.
2. **Site Evaluations** – If a site evaluation is required by our in house technician. There will be a $150 fee applied to your payments.
   a. Exception 1: Drywall cuts are needed to see rafter sizing.
   b. Exception 2: An in house second opinion is required.
3. **Roof Conditions:** All roofing conditions must be at a maximum age of 15 years old and no more than 2 layers. Roofs that are older than 15 years old or more than 2 layers will need an in-house site evaluation at Channel Partners cost. If deemed the roof needs to be replaced, the Channel Partner will be responsible for roof costs.
4. **Portal Access** - All loans or lease solar products are to be sold through the GenRenew SunPower portal
5. **Payment** - GenRenew agrees to pay Channel Partner over the base amount according to Exihbit A not including any adders below. All of the above is assuming the base price of $2.00 that is paid to SunPower for all major components, if this changes then pricing is subject to change. Pricing is subject to change at anytime for any reason and GenRenew will communicate any change within 24 hours. Jobs sold prior to pricing changes will be honored as long as they adhere to all other items in this agreement.
6. **Cash products** - Shall be sold using SunPower products and a minimum of $1.35 will be added to the price of major SunPower components including panels, racking, and inverters.  50% of all cash/loan products must be using premium (currently X series) of panels.
7. **Cancellations –** Partner agrees to keep their cancellation rate below 10%. If the rate rises above 10%, pricing penalties may occur by way of an increased rate. If a project has been cancelled for any reason, any monies paid out to the partner are due back in full. GenRenew will issue a debit memo and can take that out of future payments that may be owed.
8. **ADDERS**
   a. **Tree removal** and **Roof replacement** or repair (not including rafter upgrades) are the sole responsibility of the Channel Partner. Adders shall be calculated accordingly. GenRenew will give the price of the adder to the channel partner in writing and will be responsible for the work.
   b. **Rafter Upgrades** & **Service upgrades** are the sole responsibility of GenRenew for projects over 7kw. GenRenew agrees to pay and provide services for Rafter and Service Upgrades that are deemed necessary for the project over 7kw. If a jobs doesn't pencil, a price increase may be necessary and shall be communicated within 48 hours once presented with the knowledge that upgrade services are necessary.

   c. **Adder List**

| ADDER NAME | PPW | |
|---|---|---|
| Flat Roof | $0.05 | |
| Trees | Quote | |
| Roof Replacement/ Repair | Quote | |
| Trenching | $500.00 | First 20' then $15 per foot |
| Standing Seam Metal | $0.05 | |
| Ground Mount 7kW-12kW | $0.55 | (+ Trenching) |
| Ground Mount  12kW+ | $0.45 | (+ Trenching) |
| Service Upgrade- customer request or jobs under 7kW | $2,000.00 | |
| Structure Upgrade | Quote | |
| Steep Roof (>37 degrees) | $0.05 | |

    d. **Other Adders**  If other major adders are discovered, GenRenew can ask the channel partner to pay part or all of the adder prior to install.  Channel partner can agree to adders or may cancel the job.  If cancelled, any M1 payment made will be due back to GenRenew on the next disbursement.

9. **Disqualified Projects** - GenRenew can deem a job unbuildable for many reasons that GenRenew or our engineering partners find.  GenRenew will give a detailed explanation to the channel partner.  Any payment made to Channel Partner at that time will be due back to GenRenew and will be taken out of next payment.

RICHARD M. ZELMA*
940 BLANCH AVENUE
NORWOOD, NEW JERSEY 07648

* LIFETIME MEMBER: TELECOM PIONEERS OF AMERICA
* LIFETIME MEMBER: COMMUNICATION WORKERS OF AMERICA
* BELL SYSTEM CERTIFIED – C.O. CALL-TRACE FORENSICS TECHNICIAN
* NJ GOVERNMENT & PR SPOKESPERSON FOR PRIVATE CITIZEN, INC.

TELEPHONE 201-767-8153
TELECOPIER: FOR COURT USE ONLY
EMAIL:  TCPALAW@OPTONLINE.NET

October 8, 2019
**VIA FIRST CLASS MAIL**
Superior Court of New Jersey
Law Division, Bergen County Courthouse
10 Main Street, Room 415
Hackensack New Jersey 07601

Dear Sir / Madam

Enclosed for filing, please find Plaintiff's;

      Case Information Statement;
      Complaint;
      and Exhibit 1.

Also please find filing fee in the amount of $250.00

Thank you for your continued courtesies in this matter.

Very truly yours,

Richard M. Zelma
PLAINTIFF, *pro se*

**Appendix XII-B1**

# Civil Case Information Statement
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| For Use by Clerk's Office Only | |
|---|---|
| Payment type: ☐ ck ☐ cg ☐ ca | |
| Chg/Ck Number: | |
| Amount: | |
| Overpayment: | |
| Batch Number: | |

| Attorney/Pro Se Name | Telephone Number | County of Venue |
|---|---|---|
| Richard M. Zelma | (201) 767-8153 | Bergen |

| Firm Name (if applicable) | Docket Number (when available) |
|---|---|
| N/A | BER-L- |

| Office Address | Document Type |
|---|---|
| 940 Blanch Avenue<br>Norwood New Jersey 07648 | Complaint |

Jury Demand   ☐ Yes   ■ No

| Name of Party (e.g., John Doe, Plaintiff) | Caption |
|---|---|
| Richard M. Zelma, Plt, pro se | Richard M. Zelma  v. SUNPOWER CORPORATION and GENRENEW LLC. and CHRISTOPHER S. SABIN SR.,and, MICHAEL MULLEN |

Case Type Number (See reverse side for listing)
*699*

Is this a professional malpractice case?   ☐ Yes   ■ No
If you have checked "Yes," see *N.J.S.A.* 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit.

Related Cases Pending?   ☐ Yes   ■ No
If "Yes," list docket numbers

Do you anticipate adding any parties
(arising out of same transaction or occurrence)?   ☐ Yes   ■ No

Name of defendant's primary insurance company (if known)   ☐ None   ■ Unknown

**The Information Provided on This Form Cannot be Introduced into Evidence.**

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?   ☐ Yes   ■ No
If "Yes," is that relationship:   ☐ Employer/Employee   ☐ Friend/Neighbor   ☐ Other (explain)   ☐ Familial   ☐ Business

Does the statute governing this case provide for payment of fees by the losing party?   ☐ Yes   ■ No

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition

Do you or your client need any disability accommodations?   ☐ Yes   ■ No
If yes, please identify the requested accommodation:

Will an interpreter be needed?   ☐ Yes   ■ No
If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).**

Attorney Signature:

**Side 2**



# CIVIL CASE INFORMATION STATEMENT
(CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

---

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

**Track I - 150 days' discovery**
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (including declaratory judgment actions) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM (coverage issues only) |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (summary action) |
| 999 | OTHER (briefly describe nature of action) |

**Track II - 300 days' discovery**
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603N | AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold) |
| 603Y | AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold) |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 621 | UM or UIM CLAIM (includes bodily injury) |
| 699 | TORT – OTHER |

**Track III - 450 days' discovery**
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

**Track IV - Active Case Management by Individual Judge / 450 days' discovery**
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 620 | FALSE CLAIMS ACT |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

**Multicounty Litigation (Track IV)**
| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 299 | OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 300 | TALC-BASED BODY POWDERS |
| 282 | FOSAMAX | 601 | ASBESTOS |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 623 | PROPECIA |
| 286 | LEVAQUIN | 624 | STRYKER LFIT CoCr V40 FEMORAL HEADS |
| 289 | REGLAN | 625 | FIREFIGHTER HEARING LOSS LITIGATION |
| 291 | PELVIC MESH/GYNECARE | 626 | ABILIFY |
| 292 | PELVIC MESH/BARD | 627 | PHYSIOMESH FLEXIBLE COMPOSITE MESH |
| 293 | DEPUY ASR HIP IMPLANT LITIGATION | 628 | TAXOTERE/DOCETAXEL |
| 295 | ALLODERM REGENERATIVE TISSUE MATRIX | 629 | ZOSTAVAX |
| 296 | STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS | 630 | PROCEED MESH/PATCH |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category**  ☐ **Putative Class Action**   ☐ **Title 59**