RICHARD M. ZELMA
Richard M. Zelma, *Pro Se*
940 Blanch Avenue
Norwood, New Jersey 07648
TCPALAW@optonline.net
Tel: 201 767 8153

| | |
|---|---|
| **Richard M. Zelma**<br>**Plaintiff**<br>vs.<br>SUNPOWER, a FOREIGN PROFIT CORPORATION;<br>and, GENRENEW LLC; a New Jersey LIMITED LIABILITY COMPANY;<br>and, CHRISTOPHER S. SABIN SR., as MANAGING MEMBER<br>and, MICHAEL MULLEN as MANAGING MEMBER<br>and, TELEMARKETERS calling from LOCAL SPOOFED N.J. NUMBERS and Does' (1-5) and ABC Corporations' (1-5); each acting individually, in concert or as a group.<br>**DEFENDANTS'** | **UNITED STATES DISTRICT COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>**CIVIL ACTION NO. 2:19-cv-20542**<br><br>BRIEF OF RICHARD M. ZELMA IN SUPPORT OF PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION TO DISMISS |

BRIEF OF RICHARD M. ZELMA IN SUPPORT OF PLAINTIFFS
OPPOSITION TO DEFENDANTS MOTION TO DISMISS

Plaintiff Richard M. Zelma, *pro se*
On the Brief

1

Plaintiff Richard M. Zelma submits this Brief in Opposition to the Defendants Motion to Dismiss and challenges the claims made by the defendants and supportive papers.

Plaintiff has been a consumer privacy advocate for 26 years. As such, being opposed to the plethora of telemarketing calls and the increase in unlawful robo calls, Plaintiff has taken the tools afforded him by Congress, mainly The Telephone Consumer Protection Act of 1991 (TCPA), and has used that as intended, to stop and deter those willing to thwart the law by bring such matter to Court.

Ironically, the Defendants don't like that; an ordinary individual having no legal training can bring suit against someone for breaking the law. And in showing their hatred for such matter, devoid of no actual defense to the allegations in Plaintiffs Complaint, the Defendants resort to the only response available, to defame the name of Plaintiff by resorting to name calling such as "Serial Plaintiff" or "Serial Filer.".

While the TCPA was implemented to protect and be used by the 'ordinary' consumer; where its terms for violations are "monetary damages" in "hope of" deterring continued wrongdoing, not once does the TCPA state where a plaintiff can bring only one suit in a lifetime.

The never ending bombardment of daily unwanted calls continue. Congress did not intend the consumer become a powerless victim, barred from further legal action. (See, E.g., Cunningham, 251 f. Supp. 3d At 1195 - 96 ("the Statutory damages

available under the TCPA are, in fact, specifically designed to appeal to Plaintiffs' self interest and to direct that self interest toward the public good: 'like statutory compensation for whistle-blowers,' they operate as bounties, increasing the incentives for private Enforcement of law.' . . . While these schemes do not eliminate the constitutional requirement of Injury-In-Fact, neither do they impose an additional hurdle simply because the plaintiff may have a motive beyond mere compensation for his injury."); Id. At 119 5 (" Nothing in the constitution . . . requires a plaintiff to be a naïf. Litigation is not college athletics. There is no 'amateurs Only' Rule. ").

In a failed attempt to support their name calling, the Defendants resort to "an article" in the (Fake News) New York Times from 1999, in which reporter (Debra Galant) called plaintiff after seeing one of his filed suits, wanting to know the ins and outs of suing a telemarketer. While Plaintiff clearly stated he is not an attorney and cannot offer any advice, legal or otherwise, he encouraged the reporter to simply look up the law and go from there.

The reporter was not satisfied, continued to inquire about the law and Plaintiffs history, where Plaintiff simply said, "I cannot comment", again referring her to look up the law. Not being aware that the short interview would become news, Plaintiff was called by a relative several weeks later informing him of the story.

Plaintiff reached out to that reporter to inform her that none of the claims were true, such as "making enough money to buy a small yacht". Ms. Galant agreed to that and other manufactured claims in the article. However responding to plaintiff, "I had to spark interest in the reader, I'm looking for a good juicy story!"

With that and despite the fact not one statement parroted from that article by the defense is true, the reporter refused to take it down but nonetheless, the defense swears to its accuracy. (SEE: Certification of attorney Freijomil)

The Defense applies the foregoing prevarication, to defend the clients unlawful actions and how they believe no violations took place. Likewise, the Defense expounds on their belief that Plaintiff is a serial litigator while ignoring the fact they are serial violators! (Defendants EXHIBIT 1)

Plaintiff has history with defendant SunPower and their use of "dealers and sub-dealers" as they call them. In July 2018, Defendant SunPower and a different dealer entered into a settlement agreement with Plaintiff to avoid the perils of potential litigation. Additionally, while PACER has a municipality of filed complaints against SunPower, which need not be repeated here, it should be noted where the abundance of evidence thereto is that SunPower has no Federal Required compliance procedures in place, neither does its dealers, hence creating SunPower and its dealers litigation history.

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff submits this memorandum in opposition to the Motion to Dismiss and supporting memorandum filed by Defendants SunPower and GenRenew ("the Motion").

## OVERVIEW

This suit is based on the Telephone Consumer Protection Act (47 U.S.C. 227; "the TCPA") and common law civil conspiracy, for autodialed telemarketing calls.

Plaintiff contends that Defendants collaborated in an effort to disseminate their "products and services" via [tele]marketing calls to thousands of homeowners without their express prior consent or invitation as required under the TCPA.

The purpose of the calls were to inquire if the called party knew about solar energy, thus "selling" the idea of free energy. In some instances the callers were lead generators or call centers working directly, hired by or under contract with the defendants and each of them.

Defendants used databases of home owner numbers, including list from database brokers to target the most fertile recipients. This enabled Defendants to "avoid" calling tenants, renters or transients. Although the allegations are sufficient to survive the Motion, discovery is expected to illuminate the participation by each member of the consortium. The argument is also premature, since Plaintiff has not had an opportunity to obtain discovery from the Defendants on the very facts they rely upon in their argument on this point.[1]  The allegations of agency and conspiracy among the defendants, described below, are more than adequate to overcome this argument.

Plaintiff will likewise explore the Defendants claim; "they were not marketing a product or service" when discovery of the critical facts at issue is obtained.  At present, the Defendants rely on its motion to dismiss thus avoiding  discovery.

## STATEMENT OF FACTS

---

[1] As the Motion is only to test the adequacy of the pleadings, specific evidence supporting Plaintiff's allegations will be presented when the case is ripe for such presentation.

1

2

3

4

The Defense argues they only called Plaintiff to discuss "alternative energy". (Compl. ¶46.) The defense fails to admit the caller refused to provide any identity to themselves. (Compl. ¶47) Moreover, the defense fails to address the spoofed caller ID in which the good name of PSE&G was used as the caller.

5

6

7

8

And while the defense is under some belief where Plaintiff is required to notify an unknown, unidentified unlawful caller that he does not wish to receive these calls, Plaintiff is relieved of such obligation by the TCPA and his placing his number on the FTC registry in 2003. [2]

9

10

11

12

13

14

15

16

17

18

Courts that have considered whether a plaintiff has a duty to mitigate damages under Section 227 of the TCPA, finding: **there is no such duty**! *See Holtzman v. Turza,* No. 08 C 2014, 2010 WL 3076258, at *5 (N.D.Ill. Oct. 29, 2010); *Fillichio v. M.R.S Associates, Inc.,* No. 09-612629-CIV, 2010 WL 4261442, at *5 (S.D.Fla. Oct. 19, 2010); *State ex rel. Charvat v. Frye,* 114 Ohio St.3d 76, 868 N.E.2d 270, 275 (2007); *Manuf. Auto Leasing, Inc. v. Autoflex Leasing, Inc.,* 139 S.W.3d 342, 347 (Tex.Ct.App.2004); *Onsite Computer Consulting Svs., Inc. v. Dartek Computer Supply Corp.,* No. 05AC-000108 I CV, 2006 WL 2771640, at *4 (Mo.Cir. May 17, 2006); *Jemiola v. XYZ Corp.,* 126 Ohio Misc.2d 68, 802 N.E.2d 745, 750 (2003).

19

20

21

A plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified." *Van Patten v. Vertical Fitness Grp.,*

22

23

24

25

---

[2] The Telephone Consumer Protection Act of 1991, 47 U.S.C. §227; 47 C.F.R.§64.1200; the Report and Order, FCC Document 92-443 et seq., (hereinafter the "TCPA"); prohibits telemarketing to residential telephone subscribers, unless, such entity engaged in telemarketing is in compliance with the Statutory [See 7 FCC Red 8752,8763-8765 (1992)]Requirements and Minimum Standards of the TCPA. 47 C.F.R. §64.1200 (e)(2)et seq.

6

No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016)(quoting *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1549 (2016) (emphasis in original)).

If in fact, the defendants were complainant with Federally regulated telemarketing procedures, and had the defendants subscribed to the no-call-registry as required by law, the calls would never have occurred. Such registry provides the marketers, call centers and lead generators with a database of numbers to input into their dialers or contractors dialers, making it impossible to ever call Plaintiff's phone. Not one of the defendants ever subscribed to the do-not-call registry.

Furthermore, while the Defendants and each of them believe Plaintiff is not entitled to identify a caller refusing to meet the the required identification compliance procedure upon reaching a proposed target, they add to their failing defense that [the] Defendants were not selling "products, goods or services". (In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; CG Docket No. 02-278; The majority of consumers and consumer groups contend that messages offering "free" goods or services or those that claim to provide information-only are designed with the ultimate goal of soliciting consumers to buy products and services and are therefore prohibited without the prior express consent of the called party. These messages, they argue, are intended to generate future sales, and the fact that no sale occurs during the call is irrelevant to their intrusiveness.

Plaintiff will address the Defendants argument below.

### PLAINTIFF'S STATE LAW CLAIMS (COUNTS ONE AND THREE) SHOULD NOT BE DISMISSED BECAUSE PLAINTIFF IDENTIFIED AN ASCERTAINABLE LOSS

**A.**   Plaintiff has alleged multiple elements of unlawful conduct by the defendants leading to an ascertainable loss defined by the CFA. A casual, consumer or even professional relationship between plaintiff and defendants has never existed.

The Defendants mislead this Court by improperly claiming that a CFA violation is created through the sale of merchandise or services. This is simply not true. The CFA, N.J.S.A. §56:8-119 addresses "do-not-call" violations. The gravamen of the within dispute does not argue "the sale of merchandise or services" but rather the initiation of unwanted prohibited marketing calls.

**B.**   The defense quotes a reference to a unrelated case; Zelma v. Konikow. This case was won on appeal, it relates to the submission of unsolicited faxes and should not be relied upon in their brief. And as defined within Charge 4.43 CONSUMER FRAUD ACT (Approved 5/1998; Revised 12/2011); A private right of action under the Consumer Fraud Act was added by amendment in 1971 without providing for jury trials.

## PLAINTIFF ALLEGES TCPA CLAIMS

**A.**   The defendants admit violations to Count Two. Plaintiff received seven (7) calls, within a twelve month period. Each call was unlawful. Each call violated §227(c)(5) by calling a number on the federal and state no-call list. (Compl. ¶99). Plaintiffs claim does not fail insofar as the defendants allege they were not offering goods or services. Each of the defendants are not exempt organizations. Therefore, the calls themselves are violations.

8

While the defendants agree the calls were considered telephone solicitations, by law, the callers are required to fully identify themselves under the TCPA. Plaintiff is entitled that right. He is entitled to know the party initiating the annoying calls and in some situations, where the callers refuse to do so, the only way is to invite the alleged "someone else" to call back. In doing so, plaintiff succeeded in identifying those responsible for the subject calls.

**B.** In Count Four of Plaintiffs complaint, a violation of the caller ID of the TCPA, is also considered a crime. When President Obama signed 47 C.F.R. §64.1601(e) into law, it was deemed a felony to spoof caller ID. As promulgated under 47 U.S.C. §227(c), Plaintiff is entitled a private right of action as he is entitled to for any other violation under §227.

Plaintiff alleges the defendants used an automatic telephone dialing system (ATDS) to initiate the calls. Plaintiff does not seek damages for the ATDS use therein. Defendants are confused.

The use of an ATDS forms a *corrogatio* of the defendants in this consortium. Through discovery, plaintiff will demonstrate how defendant GenRenew acted in concert with defendant SunPower to disseminate their products and services. Plaintiff will show through defendants phone records and sales agreements where the use of an overseas call center and an ATDS was used to initiate the unlawful calls while hiding the actual identity of the principals behind the calls.

Plaintiff believes and thereby avers where the known defendants instructed and directed the yet unknown overseas entities to avoid identifying themselves and others until and unless the called party showed interest in the[ir] offering.

Defendant SunPower is alleged to manufacture solar panels. Defendant GenRenew is alleged to be a master dealer for SunPower.  The scheme of their calls was to interest a home-owner in obtaining free electricity or at best, little cost. Eventually the defendants "inquiry about alternative energy" would in fact, lead to the offer of products, goods or services from the known defendants.

C.     As a result of the defendants willful or knowing initiation of marketing calls to Plaintiff, by their willfully spoofed calls, by their failure to register and subscribe to the federal and state no call list, Plaintiff is entitled to statutory trebled damages.

## CONCLUSION

It should first be noted; the within matter was agreed to settlement in principle on or about January 6, 2020. During that time, Mr. Freijomil would not send supportive documents, claiming "the matter takes time." At that same time, untrue negative descriptions surfaced with defaming statements from (Defendant) co-counsel John D. Coyle.

When Plaintiff addressed the matter, and after repeatedly asking for settlement papers, Mr. Freijomil claimed that Plaintiff paused the process. To date and at the time of this writing, Plaintiff has not received any papers testifying to a settlement.

For the foregoing reasons, Plaintiff respectfully requests This Court to deny the defendants motion to dismiss in its entirety, thus allowing Plaintiff to proceed with appropriate discovery in the matter.

Alternatively; since the defense alludes to Plaintiff not having Article III Standing (Def. Brief, Mtn. to Dismiss, pg 13) and if This Court believes Plaintiff lacks Article III Standing under the Constitution, Plaintiff respectfully request that the within matter be Remanded back to State Court.

Respectfully submitted;

Richard M. Zelma                    Dated: January 17, 2020
PLAINTIFF, *pro se*

Richard M. Zelma, **Pro Se**
940 Blanch Avenue
Norwood, New Jersey 07648
TCPALAW@optonline.net
Tel: 201 767 8153